UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERMAINE SMITH, | Civil Action No. 16-7633 (BRM) |
| Plaintiff, | |
| v. | **OPINION** |
| STEPHEN D'ILIO, et al., | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Jermaine Smith's ("Plaintiff") Complaint raising claims against various prison officials pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Because Plaintiff has been granted *in forma pauperis* status and is a prisoner seeking redress from state employees, this Court is required to *sua sponte* screen the Complaint and dismiss Plaintiff's claims if they are frivolous, malicious, fail to state a claim for relief, or seek damages from a defendant who is immune. 28 U.S.C. §§ 1915(e)(2)(B), 1915A. For the reasons set forth below, Plaintiff's claim for intentional infliction of emotional distress and claims against defendants in their official capacity are **DISMISSED**. Plaintiff's remaining claims may proceed.

**I. BACKGROUND**

Plaintiff is a convicted state prisoner who has been incarcerated at New Jersey State Prison ("Trenton State Prison") since 2008, with short stays at other prisons. (ECF No. 1 ¶¶ 7, 24.) In 2008, after he made numerous complaints about correctional officers, Plaintiff was temporarily transferred to Rahway State Prison but was transferred back to Trenton State Prison in 2011. (*Id.* ¶¶ 24, 26.) Sometime in 2013, Plaintiff was recognized by defendant Lieutenant Bundy ("Bundy")

who allegedly began telling Plaintiff's housing unit officers about his history of filing grievances against officers. (*Id.* ¶¶ 27-28.) Plaintiff alleges this instigated a "campaign of harassment," including an altercation with Bundy and defendant Sergeant Anderson ("Anderson") in October 2013, which resulted in Plaintiff's detention, loss of "comp time," and administrative segregation.[1] (*Id.* ¶¶ 29-31.)

In September 2014, Plaintiff was transferred to a new cell, which, Plaintiff contends, was "condemned," frequently flooded, was "covered with mold and mildew," and had little to no running water. (*Id.* ¶ 33.) Plaintiff complained to several Corrections Officers, including defendants Collins ("Collins") and Cupo ("Cupo") but was told to deal with it. (*Id.* ¶ 34.) Subsequently, throughout October and November 2014, Plaintiff filed complaints with the administration and contacted the ombudsman but was unable to obtain the relief sought. (*Id.* at ¶ 36.) On November 4, 2014, Plaintiff spoke with a social worker—William Leonard—although it is unclear if this conversation resulted in any change. (*Id.* ¶ 37.)

On November 7, 2014, Plaintiff claims to have become ill from the conditions of the cell and sought medical help from a triage nurse who took him to the clinic. (*Id.* ¶ 38.) There, "APRN Ms. Carol Gallagher" ordered "a treatment"[2] for Plaintiff and sent him back to his cell. (*Id.*) On or about November 17, 2014, Plaintiff sought further treatment from a triage nurse who gave him "2

---

[1] Because this claim is more than two years old, and because Plaintiff provides nothing more than a conclusory allegation of retaliation in reference to the October 2013 incident, this Court does not construe that incident as being part of Plaintiff's claims, and instead interprets Plaintiff's complaint to assert retaliation claims against Bundy and Anderson based on their involvement in the later incidents (such as the shower assault incident Plaintiff alleges, *infra*). If Plaintiff did intend to raise a claim based on the October 2013 incident, that claim would most likely be time barred, and would otherwise fail to state a claim as Plaintiff provides no more than a conclusory allegation of retaliation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Complaint does not specify for which medical condition Plaintiff was treated.

respiratory treatment[s]" and admitted him to the infirmary. (*Id.* ¶ 39.) The following day, Plaintiff was moved to a different cell, which lacked mildew and mold but did not have running water. (*Id.* ¶¶ 40-41.) Plaintiff allegedly complained about the conditions of his new cell, and Cupo and Collins told him he could use the water running through the toilet if he needed water. (*Id.* ¶ 41.) On November 20, 2014, Plaintiff complained to Anderson, who responded by telling Plaintiff to "[d]o [u]s all a favor and die." (*Id.* ¶ 43.)

Thereafter, Plaintiff continued to complain to the assistant ombudsman about the lack of running water and that he had not been able to clean his hands for ten days. (*Id.* ¶ 44.) He was transferred to a new cell but contends this new placement was retaliatory because it was "all the way to the back of the tier." (*Id.* ¶ 45.) Plaintiff states he was subject to further retaliation for the next two weeks, including the theft of his mail, the repeated searching and "trashing" of his cell, and officers refusing to provide him meals. (*Id.* ¶ 46.)

By way of example, Plaintiff contends on December 15, 2014, he asked defendant Officer Adreano ("Adreano")[3] to see if he was cleared to have his TV returned to his cell. (*Id.* ¶ 47.) Adreano told him the new privileges list had not yet been produced but, even if Plaintiff had been cleared for a TV, Adreano would not retrieve it for him. (*Id.* ¶ 48.) Plaintiff asked why the guards mistreated him, to which Adreano responded Plaintifff would be left alone if and when he "learned how to mind [his] own business and stop writing up correctional officers whenever [he] had a problem and to deal with it like a man." (*Id.* ¶¶ 49-50.) Plaintiff replied he only wrote complaints because guards "would not leave [him] alone and went out of their way to bother [him]." (*Id.* ¶ 51.) In retaliation for Plaintiff's comment, Adreano allegedly locked Plaintiff in the shower and

---

[3] The Court assumes "Defendant Adreano," as named in the Complaint (ECF No. 1 at ¶ 48), and "S.C.O. Anderno," as named in the caption, are intended to reference the same person.

conducted a search of Plaintiff's cell during which Adreano "trashed" the cell by "throwing [his] property around" and "ransacking" Plaintiff's goods. (*Id.* ¶¶ 52-55.) Plaintiff asked to have a supervisor called so he could complain, but Adreano ordered him back into his cell and told him to clean up the cell without calling a supervisor. (*Id.* ¶¶ 56-57.)

Four days later, on December 19, 2014, defendant Sergeant Patterson ("Patterson") came to Plaintiff's unit for a routine inspection at which time Plaintiff asked Patterson for his TV. (*Id.* ¶¶ 58-59.) Patterson refused to intervene and told Plaintiff that he would have fewer problems with unit officers if he stopped filing paperwork against them. (*Id.* ¶¶ 60-62.) Plaintiff filed a complaint against Patterson and Adreano, and the property officer brought Plaintiff the TV the following day. (*Id.* ¶¶ 63-64.)

Plaintiff was moved to another unit on December 21, 2014. (*Id.* ¶ 65.) On December 24, defendant Corrections Officer Bell ("Bell") allegedly told him Plaintiff would not be in his new unit long if he continued his practice of filing multiple complaints. (*Id.* ¶ 66.) Plaintiff responded he wanted to be left alone and would not complain if he were left to himself. (*Id.* ¶ 67.) That evening, during dinner service, defendant Officer Corsafulli ("Corsafulli") "deliberately threw [Plaintiff's] dinner tray onto [his] cell floor" rather than handing it to him. (*Id.* ¶ 68.) When Plaintiff complained, Corsafulli told him that it was not his job to wait for Plaintiff to take the tray. (*Id.* ¶ 69.)

As Plaintiff was cleaning up the tray, several officers arrived to conduct a search of Plaintiff's cell. (*Id.* ¶ 70.) Plaintiff was taken to a shower and held there during the search, which uncovered a packet of prednisone pills. (*Id.* ¶¶ 71-72.) When confronted with the pills, Plaintiff stated they had been prescribed by a doctor, to which Patterson replied he would place Plaintiff in lock up regardless. (*Id.* ¶ 73.) Plaintiff called for a nurse, who confirmed that the pills were, indeed,

4

prescribed by a doctor for Plaintiff's asthma. (*Id.* ¶¶ 74-75.) Plaintiff alleges Patterson became angry, pepper sprayed Plaintiff several times, and threatened to beat Plaintiff while he was still locked in the shower. (*Id.* ¶ 76.)

Bundy arrived and, after speaking with Patterson, told Plaintiff the extraction team was coming to "put [Plaintiff] in the morgue" because a weapon was found in Plaintiff's cell. (*Id.* ¶¶ 79-80.) Plaintiff states several officers, including defendants Officer Mallete ("Mallete"), Collins, Bell, Patterson, and several John Does, entered the shower area and beat Plaintiff, leaving him with considerable injuries to his head and torso. (*Id.* ¶ 81.) While being escorted to the medical unit, Plaintiff contends Bundy threatened further actions if Plaintiff continued to complain about what had been done to him. (*Id.* ¶ 83.)

Upon being placed in the medical unit, defendant nurse Joseph Rakoczy ("Rakoczy") checked Plaintiff's blood pressure and said to him, "I don't have time for this shit[,] don't die on my watch." (*Id.* ¶ 85.) Despite the poor test results and Plaintiff's repeated requests for aid, Rakoczy refused to provide any further care. (*Id.* ¶¶ 85-86.) When the next shift of nurses arrived, they immediately sent Plaintiff to the hospital, where he was treated for severe injuries for two days. (*Id.* ¶ 87.)

Plaintiff was transferred to another unit upon his return from the medical unit. (*Id.* ¶¶ 87, 89.) On January 20, 2015, Plaintiff discovered the shower room in his new housing unit was closed for repairs because there was little lighting and no hot water. (*Id.* ¶¶ 90-91.) Nevertheless, defendant Officer Grundy ("Grundy") escorted Plaintiff to that shower room and told him to either use that cold water or not shower. (*Id.* ¶¶ 90, 92.) While using the cold shower, Plaintiff touched an exposed wire near his hung towel, suffered an electric shock, and began convulsing. (*Id.* ¶ 93.) Plaintiff was taken to the medical unit in a wheelchair where he was diagnosed with electrical

burns on his feet and hands. (*Id.* ¶ 95.) Although Plaintiff saw a doctor the following day, he alleges defendant Dr. Ahsan ("Ahsan") "did not come within ten feet of [him]" and discharged him without checking his injuries, telling Plaintiff to submit a sick slip if he needed further treatment. (*Id.* ¶¶ 97-98.) Plaintiff made several such requests for treatment over the next few days but did not receive a response. (*Id.* ¶¶ 102-03.) Plaintiff was eventually taken back to a new cell in his prior housing unit. (*Id.* ¶¶ 103, 105.)

Officers for Plaintiff's unit, including Collins, denied Plaintiff running water and food, and Plaintiff complained to the prison's ombudsman several times over three weeks. (*Id.* ¶¶ 106-08.) Eventually, the ombudsman told Plaintiff that Anderson disputed Plaintiff's claims and said Plaintiff was lying about the conditions of the cell. (*Id.* ¶ 109.) Anderson filed an institutional charge against Plaintiff for making false complaints. (*Id.* ¶ 110.) Plaintiff was acquitted of that charge in March 2015. (*Id.* ¶ 111.)

Although the Complaint contains no direct allegations as to the prison warden Stephen D'Ilio ("D'Ilio"), Plaintiff asserts D'Ilio was "aware of the issues" because Plaintiff filed "in excess of (22) institutional grievances and complaints," as well as several letters to various administrative staff. (*Id.* ¶ 113.)

## II. LEGAL STANDARD

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seeks damages from a state employee, *see* 28 U.S.C. § 1915A. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28

U.S.C. § 1915(e)(2)(B). This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a convicted state prisoner who has been granted *in forma pauperis* status and raises claims against state employees.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[4] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## III. DECISION

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard*

---

[4] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

*v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (noting that section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

Here, Plaintiff asserts the following causes of action: (1) an excessive force claim against Patterson, Mallete, Bell, and Collins; (2) a failure to protect claim against Bundy, Patterson, Mallete, Court Officer Bonanno, and Bell based on a failure to intervene; (3) a claim for deliberate indifference to medical needs against Ahsan and Rakoczy for failing to treat him; (4) a claim for deliberate indifference to conditions of confinement against D'Ilio, Collins, and Cupo; (5) a claim for First Amendment Retaliation against Patterson, Bundy, Anderson, Mallete, Bell, Corsafulli, Adreano, Collins, and Cupo; (6) state law negligence claims against D'Ilio, Grundy, Collins, and Cupo based on the electric shock incident and his placement in allegedly mold ridden cells; (7) a common law assault and battery claim against Patterson, Mallete, Collins, and Bell; and (8) a claim for intentional infliction of emotional distress against Collins, Cupo, and Anderson based on Plaintiff being placed in "abhorant living conditions." (ECF No. 1 at 13-17.)

### A. Plaintiff's Claims Against Defendants In Their Official Capacity

Defendants are immune from Plaintiff's claims against them in their official capacity. "That a State may not be sued without its consent is a fundamental rule of jurisprudence." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (quoting Ex parte *State of New York*, 256 U.S. 490, 497 (1921)). This protection is afforded by the Eleventh Amendment, which provides that "[t]he judicial power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. States are immune from suits in federal court brought by their own citizens, or citizens of other states, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01; *see also Thorpe v. New Jersey*, 246 Fed. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . . ."). "Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

A state's immunity is also preserved under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989); *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). Significantly, a state and its sub-divisions, including its prisons, are not subject to suit under § 1983 because they are not "persons" subject to suit under the statute. *Will*, 491 U.S. at 65-66. A suit against a state official for money damages in his official capacity is "not a suit against the official but rather is a suit against the official's office" and is thus "no different from a suit against the State itself." *Id.* Thus, state employees may not be sued for money damages in their official capacities under section 1983.

Here, Plaintiff, in his Complaint, seeks only money damages and raises claims against all defendants in both their individual and official capacities. All defendants other than Rakoczy and Ahsan are employees of the prison and, in turn, the state. Because state employees in their official capacities are immune from suit under § 1983 and the Eleventh Amendment, Plaintiff's claims against all defendants in their official capacity, save Rakoczy and Ahsan, are dismissed.

9

As to Rakoczy and Ahsan, Plaintiff alleges they are employees of "Rutgers Medical," the organization that provides medical services to Trenton State Prison. A suit against Rakoczy and Ahsan in their official capacities is therefore a suit against their employer, Rutgers Medical. The Third Circuit has yet to determine whether prison doctors are state actors and, therefore, immune from suit under the Eleventh Amendment. *See Endl v. New* Jersey, 5 F. Supp. 3d 689, 699-700 (D.N.J. 2014) (collecting conflicting cases in this Circuit regarding immunity of defendant University of Medicine and Dentistry of New Jersey while providing medical services to inmates). Assuming, *arguendo*, Rutgers Medical is not barred from suit under § 1983 or the Eleventh Amendment, Plaintiff fails to plead any facts which would allow this Court to impute the actions of Rakoczy or Ahsan to their employer. *See, e.g., Duran v. Merline*, 923 F. Supp. 2d 702, 731 (D.N.J. 2003) (holding a claim against medical provider/employer requires pleading facts which would permit the inference that the denial of treatment was the result of a policy, practice, or custom put into place by the employer). Alternatively, to plead a § 1983 claim against a state employee in his official capacity, a plaintiff must identify a policy, ordinance, or practice of the official's employer, which caused or resulted in the alleged constitutional violations. *See Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-36 (2010); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). Because Plaintiff fails to make this showing, his claims against Rakoczy and Ahsan in their official capacity are dismissed. Plaintiff's remaining § 1983 claims may proceed under 28 U.S.C. § 1915(e)(2)(B).

**B. Plaintiff's State Law Claims**

Plaintiff raises state law claims for intentional infliction of emotional distress, negligence, and assault. Under New Jersey law, a claim for intentional infliction of emotional distress requires the plaintiff to allege: (1) the defendant intended to cause emotional distress, (2) the defendant

10

engaged in extreme and outrageous conduct, (3) this conduct proximately caused emotional distress to the plaintiff, and (4) the emotional distress which resulted was sufficiently severe. *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001); *see also Smart v. Santiago*, Civ. A. No. 15-1065, 2015 WL 2226207, at *6 (D.N.J. May 12, 2015); *Taylor v. Metzger*, 706 A.2d 685, 694-97 (N.J. 1998). Qualifying conduct by a defendant must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Taylor*, 706 A.2d at 694 (internal quotations omitted). To meet the intent requirement, such conduct must be the result of a defendant acting either intentionally or recklessly "both to do the act and to produce emotional distress." *Id.* at 696. Finally, emotional distress is sufficiently severe only where the alleged distress is "so severe that no reasonable person could be expected to endure it." *Id.* (internal quotations omitted). Plaintiffs must therefore generally plead that they have suffered "severe and disabling emotional or mental condition[s] which may be generally recognized and diagnosed." *Id.*

Even if this Court were to assume defendants' actions were sufficiently outrageous and performed with adequate intent,[5] Plaintiff has not pled that he has suffered an adequately severe level of emotional distress. Plaintiff merely provides a conclusory allegation that he has suffered emotional distress without providing any factual allegations as to the emotional distress he has endured. Therefore, Plaintiff has not pled facts which would allow the Court to infer he has suffered "severe and disabling emotional or mental condition[s] which may be generally

---

[5] As Plaintiff has failed to plead any facts showing any of the defendants named in his intentional infliction of emotional distress claims that actually made the decision to place him in the cells in question, it is doubtful he has adequately pled that they intentionally or recklessly acted to cause him emotional distress.

11

recognized and diagnosed." *Id.* Accordingly, Plaintiff fails to state a claim for intentional infliction of emotional distress, and that claim is dismissed without prejudice as to Collins, Cupo, and Anderson.

However, the Court finds no reason to dismiss Plaintiff's remaining state law claims for negligence and assault and battery at this time, and those claims may proceed in accordance with 28 U.S.C. § 1915(e)(2)(B).

**IV. CONCLUSION**

For the reasons stated above, all of Plaintiff's official capacity claims are **DISMISSED WITHOUT PREJUDICE**, and Plaintiff's intentional infliction of emotional distress claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's remaining claims shall **PROCEED** at this time. An appropriate Order will follow.


Date: August 4, 2017                                  */s/Brian R. Martinotti*
                                                      **HON. BRIAN R. MARTINOTTI**
                                                      **UNITED STATES DISTRICT JUDGE**